UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 19-10319-PBS |
| v.                                          ) | |
| ) | |
| JOHN M. LYNCH,                     ) | |
| Defendant.          ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Figuratively speaking, the defendant got caught with his hand in the cookie jar. Literally speaking, the Boston Planning and Development Agency's Assistant Director of Real Estate got caught with his hand grabbing thousands of dollars in cash as part of a corrupt bribe to enrich himself at the public's expense. *See* Exhibit A.

For this brazen and blatant abuse of power, the government requests that on January 24, 2020 the Court sentence defendant John M. Lynch (hereinafter, "defendant" or "Lynch") to a 48-month term of imprisonment, a sentence that is within the United States Sentencing Guidelines ("Guidelines") as calculated by the United States Probation Office, forfeiture of $50,000, as well as restitution in the amount of $14,400, payable to the Internal Revenue Service.

I.   Advisory Sentencing Guidelines

The United States Probation Office ("Probation") position with respect to the Sentencing Guidelines is set forth at pages 6-7 of the Final Pre-Sentence Report ("PSR"), and follows, in sum:

(i) in accordance with USSG § 2C1.1(a)(1), defendant's base offense level is 14 because the defendant was a public official;

(ii) in accordance with USSG §§ 2C1.1(b)(2) and 2B1.1(b)(1)(G), the defendant's offense level is increased by 12 because the benefit received in return for the payment was $541,000;

      (iii)    in accordance with USSG § 3D1.4, the defendant's offense level is unchanged by the tax offenses charged in the Information; and

      (iv)    in accordance with USSG § 3E1.1, the defendant's offense level is decreased by 3 levels because the defendant has accepted responsibility for the offenses in a timely manner.

Accordingly, the total offense level is 23. The defendant's criminal history category is I, which results in a GSR of 46 to 57 months' imprisonment. PSR at ¶ 90.

Neither the government nor the defendant objected to Probation's calculation of the sentencing guidelines in the PSR.

    II.    <u>Factual Background</u>

<u>The defendant</u> - John Lynch was the Assistant Director of Real Estate at the Economic Development Industrial Corporation ("EDIC"), a part of the Boston Planning and Development Agency ("BPDA"), which is the Boston city agency responsible for managing and overseeing certain Boston city agency-owned properties (e.g., the Raymond L. Flynn Marine Park and Charlestown Navy Yard). Prior to joining EDIC in or about 2016, Lynch worked for over 20 years at the Boston Department of Neighborhood Development, another city agency involved in creating and managing affordable housing within Boston. PSR ¶ 8.

<u>The Developer</u> - The Developer (referred to as "Individual A" in the Information) was a Boston real estate developer. A licensed engineer by trade, the Developer began his career working as a civil engineer for various private Boston firms through the 1980s. As the economy turned, the Developer left the private sector to work as a project manager for the Boston Public Facilities Department ("PFD"), a Boston municipal department charged with assisting other city agencies in the planning, design, construction, and renovation of city-owned buildings. Working

2

as a project manager at the PFD through the 1990s, the Developer made many connections in the Boston real estate development world, including Lynch, who also worked at the PFD.  As a side source of income through the 1990s and beyond, the Developer was involved in his own private residential real estate investment and development.    PSR ¶ 9.

The Zoning Board Member - ("ZBA Member") was a member of the seven-member Zoning Board of Appeal ("ZBA"), a regulatory and enforcement agency within the City of Boston which was responsible for hearing and ruling on requests for various permits, variances, and other zoning relief pertaining to properties within Boston.   The ZBA Member was also an owner of a private real estate brokerage firm that markets and sells residential properties in Boston.  Lynch had known the ZBA Member for years on a personal and professional basis, and had hired the ZBA Member as the broker for the defendant's sale of two residential condominium units in Dorchester, which closed in September 2018 and March 2019, respectively.  PSR ¶ 10.

Overview of the Offense

In or about 2018, the government learned that the Developer had been paying cash bribes to Lynch in return for Lynch's official assistance in obtaining an extension of a key permit pertaining to one of the Developer's properties.  PSR ¶ 11.

The government learned that, in or about 2017, the Developer sought a buyer for a significant parcel of real estate in Boston.  However, pivotal to the sale of the property was the Developer's ability to obtain ZBA approval for an extension of a permit that would allow his property to be developed into multiple residential units.  In order to obtain this permit extension, the Developer entered into an agreement with Lynch whereby Lynch agreed to use his official

position to advise the ZBA Member to vote in favor of a permit extension for the property in exchange for a cash bribe. PSR ¶ 12.

Lynch and the Developer had agreed that the Developer would pay Lynch the bribe in the form of a silent broker's fee of $50,000 after the property sale had closed. In May 2017, the ZBA Member, as per Lynch's instruction and advice, voted in favor to grant the permit extension to the Developer. After obtaining the permit extension, the Developer was able to sell his property at a substantial profit (approximately $541,000) – a profit that he would not have been able to realize without Lynch's official assistance. PSR ¶ 13.

After the Developer's property sold in January 2018, the Developer began making the bribe payments to Lynch as follows:

- February 16, 2018 – the Developer gave a $25,000 check to Lynch with the payee blank at Lynch's direction. Lynch then made the check payable to a contractor performing work on Lynch's Dorchester property to disguise the illicit bribe income.
- March to July 2018 – the Developer made two (2) $5,000 cash bribe payments to Lynch.
- September 5, 2018 – the Developer made a $5,000 cash bribe payment to Lynch.
- October 3, 2018 - the Developer made a $5,000 cash bribe payment to Lynch.
- November 20, 2018 – the Developer made a final $5,000 cash bribe payment to Lynch.

PSR ¶ 14.

In 2019, the government obtained Lynch's 2018 federal personal income tax return. LYNCH's 2018 return showed that (i) Lynch had caused his accountant to file his 2018 personal return on or about April 9, 2019; (ii) Lynch did not report any of the $50,000 bribe, plus an additional $10,000 in income that he had received from the Developer that year; and (iii) Lynch

had declared, under penalty of perjury, that the income that he had reported on the 2018 return was true, correct, and complete. PSR ¶ 15.

### III. 18 U.S.C. § 3553 Factors

A 48-month sentence is appropriate in this case. The gravity of the offense cannot be overstated. This case has shown that development in Boston was not being played on a level-playing field. That a mere $50,000 bribe could move the gears of government to favor a multi-million condominium project undermines the public's confidence in its essential government institutions and erodes the public's faith in its public stewards. The public is the victim in this case.

A 48-month sentence is also appropriate for this defendant. The defendant was an experienced government actor, having spent decades learning the ins and outs of real estate development in Boston from his time at the Boston Department of Neighborhood Development. From there the defendant attained a leadership position as the Assistant Director of Real Estate of an agency within the BPDA. But rather than use his institutional knowledge and experience to help the average taxpayer, Lynch used his city position and official influence to aid a crooked developer so that he could line his own pockets with cash.

A significant prison sentence in this case would also promote respect for the law, serve as adequate deterrence, and avoid sentencing disparity. The United States Sentencing Commission's ("USSC") publicly available sentencing report for Massachusetts for Fiscal Year 2018 is attached as Exhibit B ("2018 MA Report"). The 2018 MA Report shows that nationwide, approximately 67% of bribery offenders were sentenced to prison, receiving an average sentence of 23 months, *see* 2018 MA Report, T. 4, T. 7.

Although Massachusetts recorded no bribery sentences for fiscal 2018, the public was reminded of an earlier corruption case when former Boston City Councilor Chuck Turner passed away late last year.  After being convicted of accepting a $1,000 cash bribe in return for aiding a nightclub obtain a liquor license, Mr. Turner received a 3-year prison sentence in this District on January 25, 2011.  This District is thus no stranger to meting significant sentences in corruption cases.

With a net worth of over a million dollars, owning luxury cars and homes in Boston and the Cape, this defendant did not steal out of need, but out of greed.  The government believes that a sentence of 48 months' imprisonment plus forfeiture and restitution is thus sufficient but not greater than necessary to acknowledge the seriousness of the offense, justly punish the defendant, protect the public, and promote respect for the law.

    Respectfully submitted,

    ANDREW E. LELLING
    United States Attorney

By:    */s/ Dustin Chao*
    DUSTIN CHAO
    Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

      I, Dustin Chao, certify that I caused a copy of this memorandum to be served electronically via ECF on defense counsel and by e-mail to U.S. Probation.

                                      */s/ Dustin Chao*
                                      DUSTIN CHAO
                                      Assistant U.S. Attorney

Date:   January 17, 2020