<pre>
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2

 3      UNITED STATES OF AMERICA,          )
                                           )
 4                  Plaintiff              )
                                           )
 5          -VS-                           )  Criminal No. 19-10319-PBS
                                           )  Pages 1 - 19
 6      JOHN M. LYNCH,                     )
                                           )
 7                  Defendant              )

 8                           SENTENCING

 9

10           BEFORE THE HONORABLE PATTI B. SARIS
                 UNITED STATES DISTRICT JUDGE
11

12

     A P P E A R A N C E S:
13

            DUSTIN CHAO, ESQ., Assistant United States Attorney,
14      Office of the United States Attorney, 1 Courthouse Way,
        Room 9200, Boston, Massachusetts, 02210, for the Plaintiff.
15

            HENRY B. BRENNAN, ESQ., Brennan & Associates,
16      20 Park Plaza, Boston, Massachusetts, 02116, for the Defendant.

17      ALSO PRESENT:  Maria D'Addieco, U.S. Probation Officer.

18

19                              United States District Court
                                1 Courthouse Way, Courtroom 19
20                              Boston, Massachusetts  02210
                                January 24, 2020, 2:35 p.m.
21

22
                          LEE A. MARZILLI
23                     OFFICIAL COURT REPORTER
                     United States District Court
24                   1 Courthouse Way, Room 7200
                          Boston, MA  02210
25                         (617)345-6787
</pre>

1          P R O C E E D I N G S

2          THE CLERK:  Court calls Criminal Action 19-10319,

3   United States v. John Lynch.  Could counsel and Probation

4   please identify themselves.

5          MR. CHAO:  Good morning, your Honor.  Dustin Chao for

6   the United States.

7          MS. D'ADDIECO:  Good afternoon, your Honor.  Maria

8   D'Addieco for U.S. Probation and Pretrial Services.

9          MR. BRENNAN:  Good afternoon, your Honor.  Hank

10  Brennan for Mr. John Lynch.

11         THE COURT:  And Mr. Lynch is here.  You may all be

12  seated.  Thank you.  We are here for the sentencing of

13  Mr. Lynch.  There were no objections to the recommendation of

14  Probation in the Presentence Report with respect to the

15  Sentencing Guidelines.

16         There are a lot of people here.  The Sentencing

17  Guidelines are in this book, and they're the starting point but

18  not necessarily the ending point for any sentence.  The

19  Guidelines put the total offense level at 23, the criminal

20  history category at I, the sentencing Guideline range at 46 to

21  57 months, supervised release at one to three years, a fine

22  range of $20,000 to $200,000.

23         As I saw it, there were no objections to the PSR, the

24  Presentence Report.  Is that correct?

25         MR. CHAO:  That's correct, your Honor.

1          MR. BRENNAN:  Not from Mr. Lynch, your Honor.

2          THE COURT:  All right, thank you very much.

3          So I have received briefing.  I received the

4     government's sentencing memo and the defense sentencing memo.

5     There were certain attachments.  In particular, I have not

6     received anything since those memos were filed.  I always like

7     to check because sometimes things are filed late.  Anything

8     else from the government?

9          MR. CHAO:  Nothing further from the government, your

10    Honor.

11         MR. BRENNAN:  No, your Honor.

12         THE COURT:  Okay, thank you.  All right, so at this

13    point I'm going to ask the -- none of it has been sealed, so

14    I've read them, and I'm going to ask the government if you want

15    to present at this point.

16         MR. CHAO:  Thank you, your Honor.  I read the

17    defendant's sentencing memo in this case, and I have to say

18    it's very moving.  There's over 40 pages of letters from

19    community leaders, whether it's the Boys and Girls Club, the

20    Gavin Foundation, from his peers, from his friends, from his

21    family members; and they consistently paint a portrait of a man

22    who is a leader, who is a helper, a man that can get things

23    done.  And the message from those letters is clear:  Don't let

24    one mistake, one crime define this defendant's lifetime of

25    achievement.  But as this Court knows, every public

1    officeholder is in the same position.  I mean, we've all heard

2    the same, even in this courtroom.  It takes a lifetime to build

3    your reputation, and it could take an instant to destroy it.

4          And what I'm here to say is that Mr. Lynch's

5    reputation wasn't destroyed in an instant.  In this case,

6    Mr. Lynch took bribe payment after bribe payment after bribe

7    payment.  I don't know the "why" of this crime.  I don't think

8    anyone does, why at the age of 67 this defendant decided to

9    embark on a career of bribe-taking; but I do know the "how" of

10   this case, how this bribe was taken, how this bribe was taken

11   time and time again by Mr. Lynch.  The bribes were taken

12   without hesitation, without reservation, and the bribes were

13   taken by Mr. Lynch with the ease of an experienced criminal.

14         And it wasn't just cash payments that were on tape.

15   This defendant directed the developer to issue a blank check,

16   which this defendant then surreptitiously directed to a

17   contractor that was doing work on one of his homes, and then

18   this defendant misled his accountant and had them conceal all

19   those cash payments and that hidden check on his income tax

20   return.

21         No, this crime was not committed in an instant.  And

22   in fact, those qualities that we get from the letters, being a

23   leader, being a helper, being someone that could get things

24   done, those were the very things that made him so valuable and

25   dangerous as a criminal with the public position that he had as

the Assistant Director of Real Estate.  He could get things
done, and he got things done.

And this case, make no mistake, this was not a sting.
This was not a case, a crime created by the government.  This
crime happened.  This bribe was real.  When the government came
upon this case, the bribe was already negotiated between this
defendant and the developer.  The act was agreed upon, the
amount of payment was agreed upon, and the corrupt act
happened.  The vote that that developer wanted, it went his
way, and he got a hefty profit.  So there's real harm in this
case.  This was not a level playing field involving the ZBA or
the position that Mr. --

THE COURT:  The Zoning Board?

MR. CHAO:  Yes, the Zoning Board.  I apologize, your
Honor.  And the government believes the Guidelines have it
right.

And I want to address one more thing that was part of
Mr. Lynch's sentencing memorandum, and there was mention I
think in the pages about retribution.  The government does not
believe this case is about retribution.  No one is seeking
retribution against Mr. Lynch.  This case is and the sentence
is about this defendant.  The sentence is about this crime.
The sentence is about this defendant's betrayal of the public
trust and this defendant's sale of his office.  And for that,
the government recommends what it believes to be the just

1  sentence in this case, a sentence of 48 months imprisonment

2  plus forfeiture and restitution as demonstrated and written in

3  Probation.  Thank you.

4        THE COURT:  And the forfeiture is of the bribe amount?

5        MR. CHAO:  Yes.  It's $50,000.

6        THE COURT:  I was a little confused about the number.

7  Sometimes I see $60,000, and sometimes I see $50,000.

8        MR. CHAO:  That's correct.  So in the indictment, it's

9  alleged that there was another transaction between Mr. Lynch

10  and this developer involving a $10,000 cash payment involving

11  another property, and that $10,000 that Mr. Lynch took he did

12  not report on his IRS tax return.

13        THE COURT:  So why isn't the forfeiture for $60,000?

14        MR. CHAO:  The $50,000 was the bribe paid by the

15  government.

16        THE COURT:  Yes.

17        MR. CHAO:  So the government included the $10,000 and

18  the $50,000 as part of his tax calculation.

19        THE COURT:  All right, so you're only seeking $50,000

20  at this point?

21        MR. CHAO:  Correct.

22        THE COURT:  All right, Mr. Brennan.

23        MR. BRENNAN:  Thank you, your Honor.

24        Your Honor, Mr. Lynch sits before you.  He is 67 years

25  old.  He is a father, a brother.  He's a husband.  He's a man

who has spent 43 years professionally trying to help people in
the city of Boston.  He sits here before you, and make no
mistake about it:  He is deeply regretful, not because he got
caught, not because he seeks mercy.  He sits before you
sincerely regretful.

In his history professionally, you've seen some of the
many letters from people in the community who Mr. Lynch has
bettered their organizations, their lives, and the many people
they helped.  I've submitted 30 letters for your Honor's
consideration, and I received many, many more.  I didn't try to
pick the best letters.  I tried to pick letters that would show
different areas and people and parts of the city that he has
helped because he has not only helped people 43 years as a
professional.  You can see from the letters he has helped
people personally, him and his family and his wife.  The
community outreach was not just part of his job.  It was part
of his character.  It is something that he enjoyed doing,
something he felt meaningful, something that in his perspective
did more for him than the people he was helping.

The disappointment that people in the community have
from his transgression I think is clear.  It's surprising, it's
disappointing, and yet, as I mentioned in the memorandum, he
still has an extraordinary amount of support.

Now, we expect our family and our children to stand by
us through almost anything, but you can see behind me there are

many, many members of the community, business owners, law
enforcement, people who have known or worked or have shared
relationships and privilege of accomplishing things for other
people with Mr. Lynch.

I don't think anybody has suggested that Mr. Lynch
should be forgiven, nor that he should not be punished.  Yet
the support you can see behind me and in front of you is
strong, and I would suggest, humbly, that the reason why it is
so strong is because despite this unforgivable transgression,
there is a deep history of character, of help and kindness that
Mr. Lynch has consistently held over decades, and I think that
says something about him as a person when we're considering
sentencing.

Mr. Lynch did not go to trial.  In fact, he was not
even indicted.  I think there was a guilt Mr. Lynch harbored
because this transgression was so out of character, and when he
was confronted, he embraced responsibility as quickly as
probably anybody could.  He fully admitted everything that he
had done.  He accepted there would be punishment, and now he
sits before you on a path that he knew would follow from his
very early acceptance.  He did not waste resources.  He did not
create frivolous arguments or legal posturing.  He knows what
he did was wrong, and he knows that he's guilty for it.

I disagree, respectfully, that this is a career
criminal.  He's a Criminal History I, but really, when you

1 think about it, some people with minor transgressions or

2 transgressions can be a Criminal History I.  Other than a motor

3 vehicle offense, there is no criminal history.

4      The bribe in this case occurred over a number of days,

5 but that is different than a serial criminal.  That is

6 different.  It is not somebody who committed numerous crimes or

7 continued crimes over the course of a career.  It was involving

8 one regrettable event, one.  So while I don't like to haggle

9 with the government's argument, I think there is a stark

10 difference between the posturing of a career criminal and this

11 gentleman that sits next to me.

12      Analogizing him to one person and what some one other

13 person got as a sentence I think is a dangerous exercise

14 because cases are different, like the government said; and to

15 suggest because one person who's well known received a

16 particular punishment, that has nothing to do with Mr. Lynch.

17 It is whatever is just for Mr. Lynch, and whatever the Court

18 deems is appropriate should be his sentence.

19      We have not suggested differences between that

20 analogy, which are clear.  We have not looked at the statistics

21 that the government has offered and said 33 percent of the

22 people who have committed a bribery deserve probation.  We

23 haven't done that.  We've looked at Mr. Lynch's history, his

24 contributions to the community, and most importantly his

25 sincerity and his remorse and regret, and we have suggested to

1  the Court a sentence that we think accommodates all the

2  important factors of punishment.

3      It would have been tempting, it would have been easy

4  to ask for a sentence that was inappropriate, to ask for

5  probation, to talk about the fact that there really is no

6  deterrence in this one criminal event, that the rehabilitation

7  and the purpose of it really is not going to be facilitated by

8  incarceration.  Yet we respect the nature of the transgression,

9  and we appreciate that the Court has a very difficult decision

10  to make, and that there is a community interest in punishment.

11      And so it was with good conscience, although it is

12  always hard to ask for jail for a client, it is with good

13  conscience that we ask for 30 months because it is significant

14  for this 67-year-old man with his history to not only embrace

15  his responsibility but to make clear to the Court that he

16  appreciates that this violation of trust and this act does

17  warrant him to go to a jail for a significant period of time.

18      Mr. Lynch has in some ways been punished.  He has

19  remarkable support behind me, yet his reputation certainly has

20  suffered; the newspapers, the public shame and humiliation,

21  receiving a phone call five minutes after a filing on Friday

22  night from Boston reporters explaining they're going to print

23  photographs that I had never received in the newspapers --

24      THE COURT:  You had never seen that picture?

25      MR. BRENNAN:  I had not.  I saw it when I got a call

from the Boston Globe and looked online.  When I called
Mr. Lynch to let him know about what was going to happen, what
stood out to me was that he didn't have the same emotion that I
did.  For him, it was inconsequential because there was no more
shame he could suffer than he already did to himself in front
of his family and the city.  He didn't suggest any unrest or
disappointment.  He didn't suggest that he was angry.  He had
no harsh words for the government because truly I think he
accepted what he did was so disappointing to so many.

So that is one thing about Mr. Lynch is resigning his
career, his family humiliation, lost pension after 43 years.
He doesn't mention those things to me other than when I ask
him.  What he repeatedly says to me is, "I wish I could take
back time for what I did to my wife and family and the City of
Boston."  He doesn't stand and say, "This is what I've lost,
this is how it's hurt me."  He was so proud of his
accomplishments to the City of Boston.  It is a consistent
theme when I talk to him.

You know, your Honor, when I walk around the city,
I've been approached like no other case by countless people,
many who I don't know, who tell me that Mr. Lynch is a good
man, and many, many of those people I've never met before.  And
so it must say something if it's not simply your family and
friends but it's a community support like we have today, and
people on the street who I've never met, it must say something

1    that he has had a substantial positive impact on his community.

2           I think the purposes of punishment, in my modest

3    opinion, can be met with him embracing responsibility,

4    restitution, and at 67 years old, with his medical conditions,

5    to accept that there needs to be jail.

6           I can say all these things as his advocate, but

7    Mr. Lynch is much more eloquent than I, and if he has the

8    opportunity, I think his words are much more powerful than

9    anything I could say for him.

10          The last note is, if appropriate, at the appropriate

11   time, I would like to make a request for your Honor's

12   consideration about potential placement of a sentence of

13   incarceration.

14          THE COURT:  Yes.  Thank you.

15          MR. BRENNAN:  Should I defer that, your Honor?

16          THE COURT:  You can make it now.

17          MR. BRENNAN:  Your Honor, I would ask you to consider

18   under the circumstances making a recommendation that Mr. Lynch

19   serve a sentence in a close-by facility, and I'd suggest

20   Devens.  Thank you, your Honor.

21          THE COURT:  Thank you.  Do you want to say something,

22   Mr. Lynch?

23          THE DEFENDANT:  Yes.  I'd like to apologize to the

24   Court for using its valuable time.  I certainly apologize to my

25   family for the embarrassment and shame that I've brought upon

them, and to the citizens of Boston that entrusted me and...I
abused.  Thank you.

THE COURT:  Thank you.  So I've already calculated the
Sentencing Guidelines, and, as I mentioned when I started,
that's the starting point for every sentence, but there are
many things that I need to consider in setting a sentence.  The
first is the seriousness of the offense.  There is no doubt
that taking a bribe is an extremely serious offense.  It is a
breach of a public duty, and it is a breach of trust to the
city, to the citizens of the city, and to the public generally.
Corruption by public officials breeds disrespect for government
and also undermines our civic values.  In the past, judges of
this court have taken crimes of corruption very seriously, and
it should be clear to every public official that if you take a
bribe, you should expect to go to jail.

So I don't think anyone in this room has disputed the
seriousness of the offense, and I move on to the second factor,
which is who Mr. Lynch is as a human being, because you need to
look at a person, the totality of a human being.  And I too was
struck by the number of letters that I received, really an
extraordinary number of letters from his community.  I think
it's from Dorchester, the citizens of Dorchester, from his
church community, from many, many charities that deal with
people with disabilities, substance abuse problems, poor
children.  He goes out and has shopped for Christmas gifts for

1  kids, I think through Big Brothers Big Sisters, and in so many

2  other ways has been a leader of the community and helping for

3  those who are less privileged.

4  In addition, I think one of his family members

5  referred to him as the patriarch of the family.  So many of you

6  are probably sitting out here right now, and I can't believe

7  anyone could have so many nieces and nephews, but you're all

8  sitting there.  And in addition, of course, he has a family

9  that's supportive of him, and there is no doubt in my mind

10  about the remorse.

11  I can't help but wondering about the "why."  I don't

12  think these presentations have helped me very much.  It's very

13  difficult for me to understand how someone who has helped so

14  many over so many years could yield to temptation to take money

15  that is essentially so troubling, not only, as I mentioned, to

16  the city and to the citizens of the city, but basically creates

17  such havoc in his own life.  I guess I suppose you don't think

18  you're going to get caught, but I kept searching in the

19  Presentence Report for the "why."

20  You have a loving family and so much support.  While

21  you have some minor illnesses, they're mostly the illnesses

22  that come with being, shall I say, our age.  They aren't

23  serious illnesses.  You have two homes and a couple of cars,

24  money in the bank.  I don't get it.  I don't understand.  And I

25  can just simply say that all of us are faced with temptations,

and you yielded and committed a very serious crime.

I do think that you have been punished a lot in the sense of your reputation. You're going to lose your pension, you're going to lose your freedom, and you've lost your job. Luckily most people who appear in front of me don't have the level of community and family support, so there's no doubt in my mind that this will not repeat. I don't believe that individual deterrence is part of this evaluation; but I do think general deterrence, as I mentioned before, that it is not okay to take money and it will be destructive of your life, I will take into account general deterrence.

I'm a little confused about this whole notion of whether retribution is involved or not. I think about it in terms of just deserts: When you commit a crime, you need to pay for it. And I don't know if that's what you were referring to as retribution, but I do think that that's one of the goals of sentencing.

I'm not even sure we need rehabilitation because, as I say, I think when he gets out, I don't think he will do this again. We'll be forfeiting the amount of the bribe, and there will be -- I don't think there's a request for a fine, is there?

MR. CHAO: There is not, your Honor.

THE COURT: And, in addition, there's going to be restitution for the tax evasion. There was some dispute about

1    what the money was.  How much was that?

2          MS. D'ADDIECO:  I believe it's $14,400.

3          THE COURT:  Is there any dispute about that -- I don't

4    think so -- the amount of taxes not paid?

5          MR. CHAO:  No.  No, your Honor.

6          MR. BRENNAN:  I think we're in agreement, your Honor.

7          THE COURT:  So going back to, well, okay, so what's

8    the sentence?  I will impose a term of incarceration of 40

9    months, 4-0.  I am giving Mr. Lynch some credit for the

10    totality of his life of philanthropy and his commitment to his

11    family, but I don't feel as if I would go as low as the

12    defense.  I feel as if the crime is just too serious.  I

13    respect the recommendation of both the government and the

14    defense attorney.  Both of them are reasonable recommendations,

15    given the gravity of offense weighed against these letters that

16    are spelling out a man that really shows that this is somewhat

17    of an aberration in your life.

18          I will impose a term of supervised release of one year

19    and no fine, the restitution, the forfeiture of the bribe, and

20    I will recommend Fort Devens.  I'm not a hundred percent sure

21    that's appropriate.  It's confusing to me now because they've

22    switched -- they have a boot camp there, I think, but if not, I

23    think Danbury is close as well.  I will just say as close to

24    Massachusetts.  I'm pretty sure he'd be classified at a low

25    level.

1       I'll allow Mr. Lynch to self-report.  In other words,

2   I will not be revoking his bail right now.  I haven't actually

3   asked the government.  Are you seeking --

4       MR. CHAO:  No, there's no opposition to that.

5       THE COURT:  Are there any other matters that I need to

6   address right now?  I don't think there are anything other than

7   the mandatory and the standard terms of supervision.

8       MS. D'ADDIECO:  Correct, your Honor, and on Page 20 of

9   the PSR, there are six special conditions that Probation would

10  request as long as the restitution remains outstanding.

11      THE COURT:  Can I stop you for a minute.

12      Will he be paying the restitution to the IRS right

13  away?  It will make a difference in terms of how I think about

14  supervised release.

15      MR. BRENNAN:  He's willing to, your Honor.

16      THE COURT:  All right, so assuming for a minute that

17  the -- when will he be able to do that?

18      MR. BRENNAN:  Your Honor, at the beginning of next

19  week.

20      THE COURT:  Fine.  So today is the 24th, so the 31st.

21  Should he write a check to the IRS, or should he give it to

22  Probation?

23      MS. D'ADDIECO:  Your Honor, the check should be made

24  out to the U.S. Clerk of Courts and dropped off here at the

25  second floor of the courthouse, and the Clerk of Courts will

1  distribute it accordingly.

2          THE COURT:  All right, that sounds fine.  Thank you

3  very much.  I am not imposing any additional conditions unless

4  somebody recommends them.

5          One of the other things that I found amazing is, often

6  on these cases you see something like substance abuse or

7  gambling problems or something.  I haven't seen any of that, so

8  I am not recommending any kinds of treatment.

9          Do you think that he needs mental health treatment or

10 any such?

11         MR. BRENNAN:  I do not, your Honor.

12         THE COURT:  There's nothing that you think will help

13 him when he gets out?

14         MR. BRENNAN:  I have seen nothing.

15         THE COURT:  Have you?

16         MR. CHAO:  No, your Honor.

17         THE COURT:  It is a big puzzle as to what happened

18 here.  Thank you very much.

19         Self-report what date?

20         MR. BRENNAN:  Your Honor, there was a recommendation

21 or suggestion of six weeks in the PSR, and if your Honor would

22 adopt that, we would ask for the six weeks.

23         THE COURT:  That's fine.  That's fine.  April 15?

24         One thing I don't know -- I am happy because it

25 doesn't really matter that much -- is, does anyone know when

1    Easter is, if he would like to do that at home before he

2    leaves?

3              THE DEFENDANT:  I don't know.

4              THE CLERK:  Easter is the week of the 11th.  It's the

5    previous week.

6              THE COURT:  So that's appropriate time to say

7    "good-bye."

8              MR. BRENNAN:  Thank you for that consideration.

9              THE COURT:  Do you want to read the notice of appeal

10   rights.

11             THE CLERK:  Would you please stand so I can read the

12   notice of appeal.  The Court hereby notifies you of your right

13   to appeal this sentence.  If you cannot afford the cost of an

14   appeal, you may move to proceed in forma pauperis.  Any appeal

15   from this sentence must be filed with fourteen days of entry of

16   judgment on the docket.

17             Do you understand these rights?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right, thank you.  And during the

20   interim, the same conditions of release that applied before.

21   Thank you very much to both of you for your briefing.

22             All right, thank you.

23             MR. BRENNAN:  Thank you, your Honor.

24             THE CLERK:  All rise.

25             (Adjourned, 3:04 p.m.)

1                    C E R T I F I C A T E

2

3
UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )
5

6

7          I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 19 inclusive, was recorded by me stenographically at

10  the time and place aforesaid in Criminal No. 19-10319-PBS,

11  United States of America v. John M. Lynch, and thereafter by me

12  reduced to typewriting and is a true and accurate record of the

13  proceedings.

14          Dated this 25th day of February, 2020.

15

16

17

18

19
                    /s/ Lee A. Marzilli
20          _____
                    LEE A. MARZILLI, CRR
21                  OFFICIAL COURT REPORTER

22

23

24

25